IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Jessa Steele,<br><br>      Plaintiff,<br><br> v.<br><br>ExxonMobil Oil Corporation;<br>XTO Energy Inc.,<br><br>      Defendants. | Civil No.: 1:23-cv-133<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>1. **SEXUAL DISCRIMINATION TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**<br>2. **SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT**<br>3. **WRONGFUL TERMINATION – RETALIATION FOR EXERCISING LEGAL RIGHTS**<br>4. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br><br>*JURY TRIAL DEMANDED* |

**COMES NOW**, Plaintiff Jessa Steele, by and through her undersigned attorney, and for her causes of action against Defendants ExxonMobil Oil Corporation and XTO Energy Inc., demands a jury trial, alleges and states as follows:

[¶1] The First Amended Complaint is filed as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1) as no responsive pleading has been served on Plaintiff yet. The First Amended Complaint adds XTO Energy Inc. as a Defendant.

## Jurisdiction and Venue

[¶2] This Court has original jurisdiction in this action pursuant to 28 U.S.C. § 1331 and § 1343 as claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

[¶3] This court has supplemental jurisdiction over the state claims under 28 U.S.C. § 1367.

[¶4]   Venue is proper pursuant to 28 U.S.C. § 1391 because the occurrences of this action took place in the District of North Dakota.

[¶5]   Plaintiff Jessa Steele filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") alleging violations of Title VII of the Civil Rights Act of 1964. The EEOC issued a Determination and Notice of Rights on April 21, 2023, and informed Plaintiff of her right to sue within ninety (90) days of the issuance of the letter. Plaintiff now invokes her rights and seeks relief in District Court.

## Parties

[¶6]   Plaintiff, Jessa Steele, (hereinafter "Ms. Steele" or "Plaintiff") is and for the time herein is and was a resident of North Dakota during the allegations of this Complaint. Plaintiff was always an employee of the Defendants herein during the allegations of this Complaint. Plaintiff is a woman that was qualified to perform her job competently, and always did perform her job proficiently with superior standards.

[¶7]   Defendant, ExxonMobil Oil Corporation, (hereinafter "ExxonMobil" or "Defendants") is a United States corporation registered as a foreign business in the State of North Dakota currently in good standing with the Secretary of State of North Dakota. The principal address for Defendant is listed in the State of Texas, but its registered agent resides in the State of North Dakota. At all times relevant herein the individuals acting herein were and are employees, agents, officers, managers and/or contractors under the direction and control of the Defendant.

[¶8]   Defendant, XTO Energy Inc., (hereinafter XTO Energy" or "Defendants") is a United States corporation registered as a foreign business in the State of North Dakota currently in good standing with the Secretary of State of North Dakota. The principal address for Defendant

is listed in the State of Texas, but its registered agent resides in the State of North Dakota. At all times relevant herein the individuals acting herein were and are employees, agents, officers, managers and/or contractors under the direction and control of the Defendant.

### Factual Allegations

[¶9]   In the present case, Plaintiff Jessa Steele, asserts claims against her employer, ExxonMobil Oil Corporation and XTO Energy Inc. ("Defendants"), pursuant to Title VII of the Civil Rights Act of 1964.

[¶10]   The claims arise from discriminatory treatment, retaliation, and wage and hour violations by Defendants subsequent to a contentious legal battle related to her deceased husband's group life insurance policy.

[¶11]   Around June 2012, Ms. Steele was hired by Defendants.

[¶12]   Ms. Steele and her late husband, Billy Steele (hereinafter "Mr. Steele"), were both employees of Defendants and were married in 2016.

[¶13]   Unfortunately, and tragically, Mr. Steele was involved in a fatal car accident in 2017.

[¶14]   Upon Mr. Steele's death, a legal battle ensued with Mr. Steele's ex-wife, Stela Festini-Steele (hereinafter "Ms. Festini-Steele), asserting a claim over the proceeds from Mr. Steele's group life insurance policy, a policy held through ExxonMobil.

[¶15]   After protracted litigation, Ms. Festini-Steele won the lawsuit against ExxonMobil.

[¶16]   Ms. Steele then proceeded to initiate her lawsuit in 2021 after Ms. Festini-Steele's case's appeal period expired. ExxonMobil was on notice that Ms. Steele intended to file an ERISA lawsuit over her deceased husband's benefits from ExxonMobil during all times relevant herein.

[¶17]   Ms. Steele settled her case shortly thereafter with ExxonMobil.

[¶18] During the period of both lawsuits, Defendants imposed a legal hold on Ms. Steele's work computer and devices due to her connection with the ongoing litigation. This legal hold on Ms. Steele's work computer and devices lasted from 2018 until June 14, 2022.

[¶19] While the lawsuits were ongoing, Ms. Steele was threatened with a transfer from her fieldwork position in Colorado to a position primarily entailing office work with light fieldwork in North Dakota.

[¶20] This threatened transfer was not only geographically dislocating but also marked a substantial shift in Ms. Steele's job profile.

[¶21] Thus, on or about July 9, 2020, Ms. Steele contacted HR in opposition to this transfer.

[¶22] Ms. Steele was ultimately transferred to Alexander, North Dakota to an environmental position that was primarily field inspection work. Ms. Steele's job began in North Dakota as a normal eight (8) hour day shift.

[¶23] In North Dakota, at the Alexander office, Ms. Steele was subjected to harassment and placed in roles inferior to her male coworkers. Ms. Steele was routinely given contradictory information and direction by her supervisors and was made to feel uncomfortable and not welcome at the office.

[¶24] In July of 2022, Ms. Steele, the only female, was taken out of the field and told to stay in the office and scan documents, a job she was overly qualified for. Ms. Steele scanned documents for over a month and had to rename them all for another Department of Defendants.

[¶25] On July 15, 2022, Ms. Steele was asked to take severance pay and quit working for the Defendants or to do a PIP (Performance Improvement Plan). Ms. Steele chose to do the PIP and ensured she would stay employed if she passed her PIP. Ms. Steele finished her scanning in July of 2022 and went back into the field to begin doing inspections per her normal job

duties.

[¶26] Ms. Steele was again pulled out of the field, to do more scanning, in September of 2022 despite the satisfactory inspection work. In the following months, she was given misinformation about what her duties were and when she was to perform them.

[¶27] Defendants changed Ms. Steele's schedule to when she could be on the clock during this time to when she arrived on company property. The male employees, in the same environmental positions, were allowed to start their work time after thirty (30) minutes of drive time, even if not on company property. Ms. Steele openly complained about this unfair treatment, and after 10 days her schedule was changed to align with the male employees.

[¶28] Ms. Steele faithfully complied with her PIP program and met with employees from Human Resources routinely. Plaintiff was still being told inconsistent things, and she routinely had to corroborate what was said to what was placed in her file. Plaintiff found numerous instances where Defendant's employees placed misleading things in her file. Ms. Steele was pressured at almost every meeting of her PIP that she could always take a severance check and quit her job instead of doing her PIP.

[¶29] During her time on her PIP, the environmental inspections team told her that they needed her in the field and they were falling behind on inspections. Plaintiff was still being held in her unnecessary scanning role.

[¶30] In October of 2022, Ms. Steele was informed by Human Resources that she would be terminated. It was clear to Plaintiff that Defendant and its employees were never going to give Plaintiff the chance to pass her PIP.

[¶31] Ms. Steele's transfer to Alexander, North Dakota was unnecessary and placed significant financial strain on her. Ms. Steele informed her employer that there were locations closer that

needed her same services.

[¶32]   The crux of the current claim is that Defendants engaged in unlawful retaliation against Ms. Steele in the wake of the litigation. Moreover, Ms. Steele alleges that following her transfer, she has been subjected to discriminatory treatment at her workplace in North Dakota and has also suffered wage and hour violations. These actions constitute violations under Title VII for which Ms. Steele now seeks redress.

[¶33]   In North Dakota, Ms. Steele was subjected to discriminatory treatment based on the ongoing litigation in addition to her gender, a protected characteristic under Title VII.

[¶34]   The discrimination became apparent when Ms. Steele was repeatedly and falsely accused of various deficiencies including but not limited to tardiness, failing to maintain a clean vehicle, failing vehicle equipment requirements, time management skills, gaps in judgment, and failing to prioritize tasks.

[¶35]   Even though company policy did not mandate daily vehicle cleaning, and her upstream management provided assurance that daily cleaning was not required, Ms. Steele was singled out for this deficiency. This requirement was not imposed on her male counterparts, suggesting that this mandate was discriminatory.

[¶36]   Additionally, company policy did not mandate the requirement of SCBA pack in her company vehicle, yet Ms. Steele was given a deficiency on vehicle maintenance records for failing to have one.

[¶37]   These alleged deficiencies culminated in the imposition of a Performance Improvement Plan (PIP), an adverse employment action.

[¶38]   Although Ms. Steele was employed as a field inspector, her performance improvement plan had her performing mundane office duties resulting in further deficiencies in her fieldwork.

[¶39] Disparate treatment began to further surface when Ms. Steele was prohibited from starting her work clock until she physically arrived on company property, whereas her male counterparts were permitted to start their work clocks 30 minutes into their drive to work.

[¶40] This difference in treatment was ostensibly justified by HR based on Ms. Steele's PIP, but following her complaint to HR, all inspectors' start times were abruptly standardized. This suggests that the original differential treatment was retaliatory and discriminatory.

[¶41] The difference in the work clock starting time resulted in wage and hour violations. Ms. Steele was effectively required to work additional time for which she was not compensated unlike her male counterparts, a violation of the Fair Labor Standards Act. This claim is substantiated by the change in policy that occurred ten days after she brought the discrepancy to the attention of HR.

[¶42] The environment in which Ms. Steele was made to work can be characterized as a hostile work environment. The continuous false allegations regarding her punctuality and vehicle cleanliness, being placed on a PIP, and differential treatment in terms of work hours contributed to an environment that was intimidating and hostile.

[¶43] Additionally, Ms. Steele was regularly asked during bi-weekly meetings to switch to a Payment in Lieu (PIL) over the PIP, a strong indication of the pressure and coercion that she was subjected to in her workplace. This was further exacerbated by additional workload pressures on her fellow inspectors, causing them to question when she would be returning to inspections, an implicit demand for her to revert to fieldwork.

[¶44] While her fellow inspectors were waiting for Ms. Steele to return to fieldwork, she was tasked with scanning and labeling over 5000 documents, preparing presentations, and creating summaries of her daily tasks.

[¶45]   Given the persistent, discriminatory, and hostile nature of these actions and their negative impact on Ms. Steele's working conditions, it is reasonable to argue that Defendants created an abusive work environment. These facts collectively suggest that the Defendants conduct was in violation of Title VII.

[¶46]   On or about October 14, 2022, Ms. Steele was wrongfully terminated for the purported reason of failing the performance improvement plan.

## LEGAL CLAIMS

1. **Claim 1 – SEXUAL DISCRIMINATION TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

[¶47]   As a separate cause of action, Plaintiff complains and realleges all the allegations contained in this Complaint and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

[¶48]   This claim is based on a violation of Title VII of the Civil Rights Act of 1964, as amended, as it makes it unlawful for an employer. "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or. (2) To limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

[¶49]   Defendants, through its employees and agents, treated Plaintiff in a much harsher manner than other employees based on her sex.  She was the only female on a male team and was

routinely pulled into the office to perform mundane tasks the males were never asked to do. Plaintiff was paid differently than the men in her same position. Defendants also fabricated and perpetuated false statements that Plaintiff was somehow unsafe in her duties. This was completely opposite of what her record stated and co-workers observed.

[¶50] Defendants routinely tried to get Plaintiff to quit and tried to demoralize Plaintiff into not feeling as an equal employee.

[¶51] Defendants and its employees intentional, willful, malicious acts were done with reckless disregard for the Plaintiff's federally protected rights to be free from discrimination based on sex.

[¶52] As a direct and proximate result of the harassing and hostile sex-based discriminatory environment from the Defendants, Plaintiff suffered great embarrassment, humiliation, and mental and physical anguish and Plaintiff has suffered emotional distress, resulting in damages and significant economic and financial loss. Plaintiff is therefore entitled to punitive damages.

[¶53] Therefore, Plaintiff seeks punitive damages and all other injunctive, declaratory, and monetary relief available for Defendant's tortious acts of discrimination in an amount to be proven at trial.

5. **Claim 2 – SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT**

[¶54] As a separate cause of action, Plaintiff complains and realleges all the allegations contained in this Complaint and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

[¶55] During all times referenced herein, Plaintiff was the subject of multiple false statements, rumors, and labels that created a hostile work environment. Plaintiff is unaware of where the genesis of this hostility began, but it was certainly perpetuated through the human resources

department of Defendants. Plaintiff was subjected to humiliating tasks that were clearly not a useful utilization of her skills.

[¶56] Plaintiff was isolated from her coworkers working in a position that was unrelated to her role as an environmental inspector. These actions and isolation damaged Plaintiff's physical, emotional, and financial well-being and damaged the reputation of Plaintiff. Plaintiff resides in a small community where the damage to her reputation is pervasive throughout the area.

[¶57] As a direct, legal, and proximate result of the hostile work environment, the gross negligence and sex-based discrimination, and the continuance of the sexual harassment activities, the Plaintiff has sustained and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

[¶58] Defendants' unlawful actions were intentional, willful, malicious, and made with a reckless disregard for Plaintiff's right to be free from discrimination based on the Plaintiff's sex, and the continuous retaliation for her reporting of the sexual discrimination, the Plaintiff is entitled to punitive damages and her reasonable attorneys' fees and costs of suit.

6. <u>Claim 3 –</u> **WRONGFUL TERMINATION –RETALIATION FOR EXERCISING LEGAL RIGHTS**

[¶59] As a separate cause of action, Plaintiff complains and realleges all the allegations contained in this Complaint and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

[¶60] Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, prohibits employers from discriminating against an employee "because they have opposed any practice made an unlawful employment practice by this subchapter."42 U.S.C. § 2000e-3(a). Plaintiff made both informal and formal complaints to the defendants' agents, employees, contractors,

and board members opposing Defendants' unlawful, discriminatory employment practices, based on sex. Plaintiff's complaints to Defendants about retaliation were made truthfully, were made reasonably, and in good faith because the facts reported by Plaintiff's complaints were true.

[¶61]   A prima facie case is presented here as well because Plaintiff was involved in litigation directly and indirectly with the Defendants over the benefits entitled to her from her deceased husband's employment with the Defendants.  Defendant placed holds on Plaintiff's work during the litigation, and transferred her to a new location involuntarily that was unfamiliar and stressful for Plaintiff.  Defendants were routinely much stricter on Plaintiff, placed Plaintiff on a PIP, tried to get Plaintiff to take a PIL, and eventually terminated Plaintiff.

[¶62]   As herein alleged, the Defendants, by and through their employees and agents illegally retaliated against Plaintiff for no legitimate reason, and such retaliation is in violation of Title VII of the Civil Rights Act of 1964.

[¶63]   As a direct and proximate result of the defendant's willful, knowing, and intentional discrimination and retaliation against Plaintiff, Plaintiff has suffered and will continue to suffer pain, humiliation, and emotional distress. Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

[¶64]   As a further direct and proximate result of Defendants' violation of Title VII of the Civil Rights Act of 1964, as described, Plaintiff will be (maybe) compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with the defendant and has thereby incurred and will continue to incur legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff.

[¶65]   Plaintiff is informed and believes, and based thereon alleges, that the Defendants' conduct as described above was willful, wanton, malicious, and done with reckless disregard for the safety and well-being of the Plaintiff. By reason thereof, Plaintiff is entitled to punitive or exemplary damages from the defendants in a sum according to proof at trial.

### 7.   Claim 4 – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

[¶66]   As a separate cause of action, Plaintiff complains and realleges all the allegations contained in this Complaint and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

[¶67]   Defendants have engaged in the aforementioned acts that were done intentionally and the conduct set forth hereinabove was extreme and outrageous and an abuse of the authority and position of the Defendants. The above-described conduct was intended to cause severe emotional distress or was done with a wanton and reckless disregard for the probability of causing such distress. This conduct exceeded the inherent risks of employment and was not the sort of conduct normally expected from an employer. The conduct that caused the emotional distress was also done in violation of the Title VII of the Civil Rights Act of 1964, and those acts have caused Plaintiff, emotional, physical, psychological, financial, and monetary harm.

[¶68]   The above-described conduct was intended to cause severe emotional distress or was done with conscious disregard of the probability of causing such distress. This conduct exceeded the inherent risks of employment and was not the sort of conduct normally expected from an employer.

[¶69]   As a direct and proximate result of Defendant's unlawful conduct, and all of them,

Plaintiff has sustained and continues to sustain pain and suffering, extreme and severe mental anguish, and emotional distress; Plaintiff has incurred and/or will continue to incur medical expenses for treatment, and for incidental medical expenses; and Plaintiff has suffered and continues to suffer a loss of earnings and other employment benefits.

**[¶70]** Plaintiff is thereby entitled to general and compensatory damages in an amount to be proven at trial. Plaintiff is informed and believes and thereon alleges that the defendants and its employees, agents, managers, and/or officers committed the acts alleged herein outrageously, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amounting to and/or constituting malice and/or oppression, and done with a conscious disregard of Plaintiff's rights, therefore the Plaintiff is entitled to punitive damages from the Defendants' conduct.

### PRAYER FOR RELIEF

**[¶1]**   **WHEREFORE**, the Plaintiff respectfully requests and prays this Court enter judgment in its favor and against Defendants, as follows:

  a. General damages in excess of $75,000.00, plus pre- and post-judgment interest;

  b. For special damages to be proven at trial;

  c. For punitive damages to be proven at trial;

  d. For exemplary damages to be proven at trial;

  e. For all interest accrued;

  f. An award of costs, disbursements, and attorney fees, as provided by law; and

  g. Such other and further relief as this Court deems just and equitable.

//

Dated this 20th day of July, 2023.

                                          O'KEEFFE O'BRIEN LYSON LTD.

                                              /s/ *Brandon M. Erickson*
Brandon Erickson (ND ID. #09333)
720 Main Avenue
Fargo, ND 58103
Phone: (701) 235-8000
Fax: (701) 235-8023
brandon@okeeffeattorneys.com
Attorney for Plaintiff