IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Jessa Steele, | ) | |
| | ) | **ORDER DENYING DEFENDANTS'** |
| Plaintiff, | ) | **MOTION TO DISMISS** |
| | ) | |
| vs. | ) | |
| | ) | |
| ExxonMobil Oil Corporation and | ) | |
| XTO Energy Inc., | ) | Case No. 1:23-cv-133 |
| | ) | |
| Defendants. | ) | |

Before the Court is the Defendants' Rule 12(b)(6) motion to dismiss filed on September 8, 2023. See Doc. No. 15. The Plaintiff filed a response in opposition to the motion on September 22, 2023. See Doc. No. 18. The Defendants filed a reply brief on October 9, 2023. See Doc. No. 21. For the reasons set forth below, the motion is denied.

**I.     BACKGROUND**

In June of 2012, Steele went to work for the Defendants in Colorado. Steele's husband (Billy Steele), who also worked for the Defendants, died in a car accident in 2017. After his death, litigation ensued between his ex-wife and ExxonMobil over proceeds from a group life insurance policy obtained through ExxonMobil. Eventually, his ex-wife prevailed in her lawsuit against ExxonMobil. The Defendants imposed a litigation hold on Steele's work computer and devices from 2018 until June 14, 2022. In 2021, following resolution of the life insurance litigation between ExxonMobil and Billy Steele's ex-wife, Steele brought an ERISA lawsuit against various defendants, including ExxonMobil, related to her husband's benefits. The parties eventually

1

resolved the ERISA action.

In 2020, while the lawsuits were ongoing, the Defendants proposed to transfer Steele from her fieldwork position in Colorado to an office work position with some light fieldwork in rural North Dakota. In July of 2020, Steele advised ExxonMobil she was opposed to the transfer. Nevertheless, the Defendants eventually transferred her to Alexander, North Dakota, for an environmental position tasked primarily with field inspection work. The transfer caused her financial strain.

Once Steele arrived in the Alexander office, she was allegedly subjected to harassment and "was routinely given contradictory information and direction by her supervisors and was made to feel uncomfortable and not welcome at the office." See Doc. No. 4, ¶ 23. She was the only female in the Alexander office. In July of 2022, Steele was taken out of the field entirely and given office work scanning a large number of documents. She performed this work, for which she was overqualified, for over a month.

On July 15, 2022, the Defendants determined Steele's work performance was inadequate. She was provided two choices: (1) stay employed and work to improve her performance through a performance improvement plan or (2) cease actively working but receive pay for a certain period of time, after which she would resign. Steele chose the performance improvement plan.

Steele finished her scanning duties in July of 2022 and went back into the field to begin doing inspections per her normal job duties. In September of 2022, Steele was again pulled from fieldwork and assigned to more scanning duties. With Steele performing office work, her coworkers fell behind on field inspections which negatively affected her performance.

Because of the performance improvement plan, her supervisors prevented her from clocking in 30 minutes before arriving at the office as was customarily allowed for other male employees who

had long commutes. Steele's supervisors also allegedly placed misleading information in her personnel file and falsely accused her of tardiness, violating company vehicle standards, poor time management, gaps in judgment, and failing to appropriately prioritize tasks. Her supervisors also regularly asked her to resign and accept the pay-in-lieu option rather than continue with the performance improvement plan. While her fellow inspectors were waiting for Steele to return to fieldwork where she was needed, she was tasked with mundane office work scanning and labeling over 5000 documents, preparing presentations, and creating summaries of her daily tasks.

On October 14, 2022, the Defendants terminated Steele's employment. Six months later, on April 18, 2023, Steele submitted a "Charge of Discrimination" to the Equal Employment opportunity Commission ("EEOC"). The charge alleged retaliation between July 1, 2022, and October 13, 2022, and specified as follows:

> I. I was hired in or about June 2012. I most recently worked as a Emissions Technician. During my employment, I engaged in protected activity and thereafter was subjected to different terms and conditions of employment, disciplined, and discharged.
>
> II. I believe I was discriminated against in retaliation for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended; and North Dakota Human Rights Act (North Dakota Century Code (N.D.C.C.) ch. 14-02.4), as amended.

See Doc. No. 19-1.

The EEOC declined to investigate and issued a "Determination and Notice of Rights" letter on April 21, 2023, which authorized the filing of a lawsuit pertaining to the allegations in the charge. See Doc. No. 19-2. On July 19, 2023, Steele commenced this lawsuit. Steele filed an amended complaint on July 20, 2023. See Doc. No. 4. The amended complaint contain four counts. Counts I, II, and III allege sex discrimination, sexual harassment, and retaliation under Title VII. Count IV asserts a state-law claim for intentional infliction of emotional distress. In lieu of an answer, the

Defendants filed a motion to dismiss the claims for sex discrimination, sexual harassment, and retaliation (to the extent not based on protected activity), as well as the intentional infliction of emotional distress claim. Steele opposes the motion which is now ripe for consideration.

## II.     STANDARD OF REVIEW

A motion to dismiss for failure to exhaust administrative remedies under Title VII should be evaluated by the Court under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Coons v. Mineta, 410 F.3d 1036, 1040 (8th Cir. 2005) (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates the dismissal of a claim if there has been a failure to state a claim upon which relief can be granted. In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotes omitted). A plaintiff must show that success on the merits is more than a "sheer possibility." Id. A complaint does not need to contain detailed factual allegations, but it must contain more than labels and conclusions. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The court must accept all factual allegations of the complaint as true, except for legal conclusions or "formulaic recitation of the elements of a cause of action." Iqbal, 556 U.S. at 678. A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. The determination of whether a complaint states a claim upon which relief can be granted is a "context-specific task that requires the reviewing court to draw on its judicial

4

experience and common sense." Id. at 679. Dismissal will not be granted unless it appears beyond doubt the plaintiff can prove no set of facts entitling him to relief. Ulrich v. Pope Cty., 715 F.3d 1054, 1058 (8th Cir. 2013).

### III. LEGAL DISCUSSION

#### A. Exhaustion of Administrative Remedies

The Defendants contend Steele failed to exhaust her administrative remedies with regard to her claims for sex discrimination and sexual harassment because she did not raise those issues in her complaint with the EEOC. Steele maintains her complaint with the EEOC is broad enough to encompass these complaints. It is undisputed Steele filed a timely complaint with the EEOC. See Doc. No. 19-1.

Title VII prohibits an employer from discriminating on the basis of sex (among other protected characteristics) and from retaliating against an employee who opposes an unlawful discriminatory employment practice. 42 U.S.C. §§ 2000e-2(a), 2000e-3(a). A plaintiff must submit a charge of discrimination to the EEOC or an equivalent state agency before initiating a lawsuit under Title VII. Jones v. City of St. Louis, 825 F.3d 476, 482 (8th Cir. 2016) (citing 42 U.S.C. § 2000e-5(e)(1)).

Recently, the Eighth Circuit Court of Appeals summarized the law to be applied when a court is faced with determining whether a plaintiff has exhausted her administrative remedies as follows:

> Our exhaustion cases have recognized that, though we construe administrative charges liberally, we will not invent, *ex nihilo*, a claim that was not made before the relevant agency. *See Sellers v. Deere & Co.*, 791 F.3d 938, 943 (8th Cir. 2015). We will consider those claims specifically raised and those that are "like or reasonably related to the administrative charges that were timely brought." *See Wedow v. City*

>   *of Kansas City*, 442 F.3d 661, 672 (8th Cir. 2006).  Over time, we have "considerably narrowed our view" of the type of claim that could be considered "like or reasonably related to" properly exhausted claims, *see id.*, so that we now require that "[e]ach incident of discrimination and each retaliatory adverse employment decision ... be individually addressed before the EEOC."  See Sellers, 791 F.3d at 943.  Despite this refinement, we have occasionally deemed a claim so like or reasonably related to an exhausted claim that we have let it proceed.  *See, e.g., Wedow*, 442 F.3d at 674.  The key is that the scope of a judicial complaint can be no broader than the scope of the EEOC investigation that "could reasonably be expected to grow out of the charge" in the EEOC complaint.  *See id.*

Weatherly v. Ford Motor Co., 994 F.3d 940, 944–45 (8th Cir. 2021).

In this case, Steele alleged retaliation and discrimination in her EEOC charge.  See Doc. No. 19-1 ("I believe I was **discriminated** against in **retaliation** for engaging in protected activity.") (emphasis added).  Steele clearly articulated claims of discrimination and retaliation.  The discrimination was alleged to have occurred between July 1, 2022 and October 13, 2022, when Steele was reassigned to the Alexander, North Dakota office.  She did not use the terms "sex discrimination," "harassment" or "sexual" in the charge.  It must be remembered that Steele is a lay person untrained in the law.  Sexual harassment and sex discrimination are closely related charges.  Steele is a woman and was the only female in the Alexander office.  When the time frame referenced in the charge is considered it is reasonable to conclude that sexual harassment and sex discrimination fall within the scope of the discrimination and retaliation alleged.  A plaintiff need not exhaust claims "like or reasonably related to the substance of the allegations in the administrative charge." Walker-Swinton v. Philander Smith Coll., 62 F.4th 435, 440 (8th Cir. 2023).  Unfortunately, the EEOC chose not to investigate her claims.  Had the EEOC done so, the scope and perimeters of what occurred during the specified time frame would be easier to define.  See Wedow, 442 F.3d at 674 (noting the complaint need not mirror the administrative charges as long as it is no broader than the scope of the EEOC investigation which could reasonably have been expected to grow out of the

6

charge). The discovery process has yet to be completed and what that will reveal is unknown. The summary judgment stage remains as well. The Court concludes that at this very early stage Steele's claims of sex discrimination and sexual harassment are reasonably related to the allegations made in the EEOC charge of discrimination.

### B.    Retaliation

The Defendants contend Steele's retaliation claim should be dismissed to the extent it is based on her involvement in ERISA litigation which the Defendants contend is not protected activity under Title VII.

An employer cannot retaliate against an employee for "oppos[ing] any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e-3(a). To establish a claim of retaliation, a plaintiff must allege (1) that she engaged in a protected activity, (2) that the employer took an adverse action against her, and (3) that a causal connection exists between the two. See Bonn v. City of Omaha, 623 F.3d 587, 590–91 (8th Cir. 2010). The employee need not oppose an employment practice that actually violates Title VII as long as "the employee acted in a good faith, objectively reasonable belief that the practices were unlawful." Id. at 591. In *Bonn*, the district court granted summary judgment in favor of the City after determining the plaintiff had failed to submit admissible evidence the City retaliated against her for opposing a discriminatory employment practice. Id. at 590. The Eighth Circuit Court of Appeals affirmed after concluding that publishing a report critical of the City's policing practice was not an employment practice protected by Title VII. Id. at 591.

The present case, unlike *Bonn* which was decided at the summary judgment stage based upon a fully developed record, is only at the pleading stage. In her complaint, Steele alleges she was

retaliated against for "opposing Defendant's unlawful, discriminatory employment practices based on sex" while noting she was also involved in litigation with the Defendants over benefits. See Doc. No. 4, ¶¶ 60-61. This is all that is required at this early stage of the litigation. The Court is not willing to limit the scope of the pleadings at this early stage of the case.

### C. Intentional Infliction of Emotional Distress

The Defendants contend Steele has failed to state a valid claim for intentional infliction of emotional distress because the alleged conduct does not rise to the level of extreme and outrageous conduct required under North Dakota law. Under North Dakota law, a claim for intentional infliction of emotional distress claim requires a showing of "(1) extreme and outrageous conduct that is (2) intentional or reckless and that causes (3) severe emotional distress." Muchow v. Lindblad, 435 N.W.2d 918, 923-24 (N.D. 1989). Extreme and outrageous conduct is that which "exceeds all possible bounds of decency" and would be regarded as "atrocious, and utterly intolerable in a civilized community." Id. at 924. Such conduct would arouse resentment toward the actor in an average member of society leading him or her to exclaim that such conduct is "Outrageous!" Id. On the other hand, "mere insults, indignities, threats, annoyances, petty oppressions or other trivialities" are not actionable. Id. Whether a defendant's "alleged actions meet the threshold of extreme and outrageous conduct is a question of law to be decided by the court." Hysjulien v. Hill Top Home of Comfort, Inc., 827 N.W.2d 533, 549 (N.D. 2013). As an initial matter, the Court must decide if the alleged conduct may reasonably be regarded as "extreme and outrageous." Id. If reasonable persons could differ, then a jury must decide whether the conduct is sufficiently extreme and outrageous to warrant liability. Id.

At this early stage of the case the Court must read the allegations in the complaint as true.

Steele alleges she was emotionally vulnerable after the untimely death of her husband in a car accident. Compounding her vulnerability were the two legal battles which ensued over her husband's life insurance proceeds. The Defendants, knowing how vulnerable Steele was and upset that she had filed an ERISA lawsuit against them, transferred her from her job in Colorado to a position in Alexander, North Dakota. This caused Steele financial hardship. When she arrived in the Alexander office she was subjected to harassment and discrimination, made to feel unwanted, and assigned mundane office tasks for which she was overqualified. The Defendants then placed her on a performance improvement plan and, after deciding she had failed to improve her work performance, fired her.

It goes without saying that the death of a spouse is stressful. So too is an unwanted job transfer to another state. The Defendants were certainly aware of her emotionally fragile condition. The clear implication is the Defendants, who knew she was emotionally vulnerable, wanted her to quit her job because she filed the ERISA lawsuit against them and did everything in their power to make her miserable that was would quit. And when she refused to quit, they fired her. The Court cannot say that no reasonable person could find such conduct to be outrageous. The discovery process may well reveal a different conclusion. However, the Court concludes Steele has alleged a plausible claim for intentional infliction of emotional distress, at least at this early stage of the case.

### IV.     **CONCLUSION**

The allegations in the complaint are adequate at this early stage of the case. The claims may or may not survive the summary judgment stage where more than assertions are required. For the reasons set forth above, the Defendants' motion to dismiss (Doc. No. 15) is **DENIED**. The motion

for hearing (Doc. No. 22) is also **DENIED**.

**IT IS SO ORDERED.**

Dated this 23rd day of April, 2024.

                                                  */s/ Daniel L. Hovland*
                                                  Daniel L. Hovland, District Judge
                                                  United States District Court